**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
------------------------------------------------------------------------X
PHILIP HARRISON,

                                                                                           **16 CV 2715**

                *Plaintiff*,

        -against-                                                                   **COMPLAINT**

ALLAN KNIGHT & ASSOCIATES, INC.,

                *Defendant*.
------------------------------------------------------------------------X

      Plaintiff Philip Harrison, by his counsel, The Harman Firm, LLP, alleges for his complaint against Defendant Allan Knight & Associates, Inc., as follows:

### NATURE OF THE ACTION

1. Plaintiff Philip Harrison ("Plaintiff" or "Mr. Harrison") seeks damages and costs against Defendant Allan Knight & Associates, Inc. ("Defendant" or "AKA"), for discriminating against him based on his disability by failing to engage in the mandatory interactive process, failing to provide a reasonable accommodation, and ultimately terminating his employment, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12101 et seq., and Chapter 21 of the Texas Labor Code ("TLC"), Tex. Lab. Code §§21.001 et seq.

### JURISDICTION AND VENUE

2. Pursuant to 28 U.S.C. §1331, this Court has jurisdiction over Plaintiff's claims arising under the ADA.

3. Pursuant to 28 U.S.C. §1332, this Court has supplemental jurisdiction over Plaintiff's claims arising under the TLC, as those claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Northern District of Texas, as a substantial part of the events giving rise to these claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent to maintaining this action have been fulfilled. A charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a Right-to-Sue Letter dated September 19, 2016, relating to the discriminatory acts described in this Complaint. This action was properly instituted within ninety (90) days of the issuance of the Right-to-Sue Letter.

## TRIAL BY JURY

6. Plaintiff respectfully requests a trial before a jury.

## PARTIES

7. At all times relevant hereto, Plaintiff was and is a resident of Dallas County in the State of Texas.

8. Upon information and belief, at all times relevant hereto, Defendant was and is a limited liability corporation organized under the laws of the State of Texas with its principal place of business at 150 Turtle Creek Blvd., Suite 101, Dallas, Texas 75207. Upon information and belief, Defendant employs more than fifteen (15) employees and is therefore covered by the ADA.

## STATEMENT OF FACTS

9. On April 20, 2016, Mr. Harrison began working for AKA in Outside Sales for the Dallas/Fort Worth region.

10. Mr. Harrison's job responsibilities included, among other things, soliciting sales for AKA, communicating with designers, and conducting systems training for AKA's Outside Sales Representatives.

11. Throughout his employment at AKA, Mr. Harrison was a dedicated and reliable employee who consistently fulfilled his job responsibilities and was praised for his performance on multiple occasions by his supervisors at AKA.

12. In or around late June 2016, Mr. Harrison began experiencing severe allergy- and asthma-like symptoms, including persistent cough and nasal drainage.

13. Mr. Harrison's symptoms grew more severe; by early July 2016, he was physically weak and experienced difficulty walking.

14. In mid-July, Mr. Harrison requested a shaded parking spot closer to the AKA building due to his worsening medical condition. AKA approved the accommodation.

15. On July 15, 2016, Mr. Harrison took a half day off work because he was experiencing weakness and shortness of breath and made an appointment with his doctor for July 18, 2016.

16. By this time, Mr. Harrison was obviously unwell: he had lost weight and appeared gaunt and exhausted.

17. Mr. Harrison had several doctor's appointments in July 2016, and on July 28, 2016, he learned that he had tested positive for HIV.

18. On July 29, 2016, Mr. Harrison informed Allan Knight, the president and co-owner of AKA, that he was HIV-positive.

19. With Mr. Harrison's approval, Mr. Knight disclosed Mr. Harrison's HIV status to Ben Goldfarb, AKA's CEO and other co-owner, later that day.

20. On August 2, 2016, Mr. Harrison arrived at work at approximately 8:30 a.m. and parked in his approved parking space.

21. Cearan Henley, AKA's Director of Marketing and Mr. Knight's life-partner, observed Mr. Harrison parking, honked at him, and gestured for him to move.

22. Shortly after Mr. Henley honked at Mr. Harrison, AKA revoked Mr. Harrison's parking space accommodation. Mr. Henley sent Mr. Harrison an email, stating that, despite what Mr. Knight had told Mr. Harrison, the parking spot was reserved for Mr. Henley and Mr. Knight's sole use.

23. As a result, Mr. Harrison stopped parking in the space.

24. Later that morning, Mr. Harrison felt extremely weak and had difficulty assisting Hedda Layne, a member of AKA's Textile Sales department, on the showroom floor.

25. Ms. Layne was supportive and found David Peterman, Mr. Harrison's supervisor and a member of AKA's Furnishings Sales department, to assist her instead of Mr. Harrison.

26. However, Mr. Knight emailed Mr. Harrison shortly afterward, criticizing his "willingness to step up and help out in the showroom" and telling Mr. Harrison that his inability to assist with floor sales was "hurting [Mr. Harrison's] image."

27. At approximately 2:00 p.m. that afternoon, Mr. Harrison met with Mr. Knight and disclosed that he had been diagnosed with AIDS and that his CD4 count[1] was below 50 cells/mm$^3$.

28. Mr. Knight told Mr. Harrison that he had to inform AKA's sales staff of Mr. Harrison's medical condition so that they would "know what is going on." Mr. Harrison did not

---

[1] CD4 T lymphocytes, or "CD4 cells," are a type of white blood cell and constitute a key component of the body's immune system. The U.S. Department of Health & Human Services considers a CD4 count of 500–1600 cells/mm$^3$ to be healthy and a CD4 count of less than 200 cells/mm$^3$ to be dangerously low.

consent to Mr. Knight's decision to share Mr. Harrison's private medical information with AKA's sales staff, but was not given the opportunity to respond to Mr. Knight.

29. At approximately 9:00 p.m. that evening, Mr. Harrison sent Mr. Knight and Mr. Goldfarb an email, informing them that his doctor had recommended that he take the day off to rest, as his condition was extremely fragile and his CD4 count was exceptionally low.

30. The following afternoon, August 3, 2016, Mr. Knight responded with an email in which he summarily dismissed Mr. Harrison's serious health concerns.

31. In this email, Mr. Knight told Mr. Harrison that it was "time for a reality check" and that Mr. Knight had previously been "much more ill…than you are now, and I was not allowed to sit things out until I felt better."

32. Mr. Knight accused Mr. Harrison of "asking AKA to take the hit" by requesting reasonable accommodations for his disability.

33. In addition, Mr. Knight listed several fabricated performance issues, including indifference, inefficiency, and lack of participation.

34. Mr. Harrison had not been made aware of any of these purported deficiencies prior to Mr. Knight's email, nor were they corroborated by the feedback he had previously received from his coworkers and supervisors at AKA.

35. Mr. Harrison responded immediately, letting Mr. Knight know that he wanted to discuss the concerns that Mr. Knight had raised and that, per his doctor's instructions, he would not be able to come into work until the following Monday, August 8, 2016, due to the severity of his condition. He scheduled a meeting for 4:00 p.m. on August 8, 2016, with Mr. Knight and Mr. Goldfarb to discuss their concerns about his performance.

36. When Mr. Harrison arrived at AKA on August 8, 2016, he found that the entire sales staff had been made aware of his AIDS diagnosis.

37. Mr. Harrison was shocked and humiliated to learn that AKA had shared his private medical information with the rest of AKA's staff.

38. In the 4:00 p.m. meeting on August 8, 2016, AKA informed Mr. Harrison that he was being terminated effective immediately, stating that they "needed someone fully capable right now." AKA presented him with a notice of termination and a separation agreement, which AKA had already drafted prior to the meeting.

39. Mr. Harrison informed AKA that his doctor had told him that he would be able to continue working at AKA without issue if he could take one (1) week of sick leave.

40. Mr. Harrison presented AKA with a doctor's note confirming this statement, yet AKA refused to look at his doctor's note.

41. AKA refused to accommodate Mr. Harrison. Mr. Knight stated, "We need someone who is at 100%, and we just can't find a reason to keep you on."

42. AKA made no effort to accommodate Mr. Harrison's medical condition and summarily terminated his employment solely because of his disability.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Failure to Provide a Reasonable Accommodation Violation of the ADA**

43. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 42 with the same force as though separately alleged herein.

44. The ADA requires employers to provide disabled employees with a reasonable accommodation.

45. Defendant interfered with Plaintiff's right to a reasonable accommodation by unlawfully terminating his employment.

46. As a direct and proximate consequence of Defendant's failure to provide a reasonable accommodation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

47. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

**SECOND CAUSE OF ACTION**
**Unlawful Termination in Violation of the ADA**

48. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 47 with the same force as though separately alleged herein.

49. The ADA states, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

50. At all relevant times, Plaintiff was qualified to perform his job responsibilities. He could perform the essential functions of his job with a reasonable accommodation, namely, one (1) week of sick leave.

51. Defendant did not make any effort to identify a reasonable accommodation such that Plaintiff could continue to perform his essential job functions.

52. Instead, Defendant discriminated against Plaintiff based on his disability by terminating his employment because he is disabled.

53. As a direct and proximate consequence of Defendant's illegal retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

54. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**THIRD CAUSE OF ACTION**
**Retaliation in Violation of the ADA**

55. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 54 with the same force as though separately alleged herein.

56. The ADA prohibits employers from retaliating against employees for exercising, or attempting to exercise, their rights guaranteed by the ADA.

57. Plaintiff attempted to exercise his rights by seeking an accommodation for his disability.

58. Defendant retaliated against Plaintiff for reasonable accommodation by unlawfully terminating his employment.

59. As a direct and proximate consequence of Defendant's illegal retaliation, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

60. Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate.

## FOURTH CAUSE OF ACTION
**Failure to Provide a Reasonable Accommodation in Violation of the TLC**

61. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 60 with the same force as though separately alleged herein.

62. The TLC states that an employer shall not "fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee."

63. At all relevant times, Plaintiff was qualified to perform his job responsibilities. He could perform the essential functions of his job with reasonable accommodations.

64. Defendant refused to provide Plaintiff with a reasonable accommodation for his disability.

65. As a direct and proximate consequence of Defendant's failure to provide a reasonable accommodation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

66. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## FIFTH CAUSE OF ACTION
**Unlawful Termination in Violation of the TLC**

67. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 66 with the same force as though separately alleged herein.

68. The TLC mandates that no employer discriminate against a qualified individual on the basis of disability in regard to the terms and conditions of his or her employment.

69. Defendant unlawfully terminated Plaintiff because of his disability.

70. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

71. Defendant's discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

**REQUESTS FOR RELIEF**

**WHEREFORE**, the individually named Plaintiff respectfully requests that this Court grant the following relief:

A. on Plaintiff's first claim, damages to be determined at trial;

B. on Plaintiff's second claim, damages to be determined at trial;

C. on Plaintiff's third claim, damages to be determined at trial;

D. on Plaintiff's fourth claim, damages to be determined at trial;

E. on Plaintiff's fifth claim, damages to be determined at trial;

F. an award of pre-judgment and post-judgment interest;

G. an award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

H. such other and further relief as this Court deems appropriate.

Dated: New York, New York
September 23, 2016

By: /s/ Walker G. Harman, Jr.

Walker G. Harman, Jr. [WH-8044]
THE HARMAN FIRM, LLP.
*Attorneys for Plaintiff*
220 Fifth Ave., Suite 900
New York, New York 10001
(212) 425-2600
wharman@theharmanfirm.com